Rockingham
No. 79-427

MEADOWBROOK INN CORP. *& a.*

v.

CHRISTOPHER SHERIDAN *& a.*

September 17, 1980

*Victor W. Dahar*, of Manchester, by brief for the plaintiffs.

*David R. Connell*, Portsmouth City Attorney, by brief for the defendants.

*Michael, Jones & Wensley*, of Rochester, by brief for the intervenor, Spectrum Enterprises, Inc.

BOIS, J. This is a petition to enjoin Portsmouth officials from issuing a building permit to Spectrum Enterprises, Inc. (Spectrum) to construct a motel. The Master (*Charles T. Gallagher*, Esq.) recommended that the plaintiffs' petition be dismissed; the Trial Court (*Mullavey*, J.) approved the recommendation and reserved and transferred the plaintiffs' exceptions. We affirm the decree.

Spectrum seeks to develop a tract of land as a motel. Following denials of requests for a variance from the lot dimension requirements for General Business property, Spectrum submitted a proposal for construction to the Portsmouth Site Review Committee. The committee approved the proposal on January 12, 1979, and authorized the city building inspector to issue Spectrum a building permit.

The original plaintiff in this action is Meadowbrook Inn Corporation (Meadowbrook), the owner of a hotel situated in the vicinity of Spectrum's property. Meadowbrook filed a petition with the Rockingham County Superior Court in January, 1979, to enjoin

certain Portsmouth city officials from issuing a building permit to Spectrum. It amended its petition following the issuance of the permit seeking its recall on grounds that the property did not comport with the lot dimension requirements of the city zoning ordinance. Spectrum was included as a party defendant in this action upon its motion to intervene. In addition, four individual owners of neighboring property were added as additional plaintiffs by motion of Meadowbrook.

Spectrum's site for the proposed motel is composed of several lots, the consolidation of which was approved by the Portsmouth Planning Board on December 21, 1978. The site review committee's approval was based in part on a "savings clause" in the city zoning ordinance, which provides that the owner of certain consolidated lots may be considered to be in compliance with dimensional requirements. Portsmouth Zoning Ordinance § 10-301(2) (as amended July 1977).

The trial court, per the master's recommendations, dismissed the plaintiffs' petition for failure to exhaust administrative remedies by not appealing the adverse decision to the Portsmouth Zoning Board of Adjustment. The court also ruled that the "savings clause" in the ordinance at issue had properly been applied to Spectrum's consolidated lot to exempt it from strict compliance with the dimensional requirements. The plaintiffs' motion to set aside the master's report was denied on June 21, 1979.

The first issue is whether the Portsmouth Site Review Committee's approval of the proposed motel, and the building inspector's subsequent issuance of a permit based upon the "savings clause" in an ordinance permitting the consolidation of lots to meet dimensional requirements, was proper. The Portsmouth Zoning Ordinance § 10-301 (as amended July 1977) provides in pertinent part as follows:

General Requirements

(1) No building or structure shall be erected, enlarged or moved . . . except in accordance with the requirements of the following schedule . . . and no more than one dwelling shall be built upon any single lot, except in the General Residence, Garden Apartment, Apartment and Central Business Districts. Where more than one dwelling is proposed to be built on a lot in these districts the spacing . . . shall be . . . equal to one-half the sum of their heights.

(2) A lot having area or frontage less than as required by the following schedule may be considered to be in

compliance therewith if: (a) The lot was shown on a recorded plan . . . prior to March 21, 1966 . . . or (b) The owner of such lot shall have submitted to and received approval by the Planning Board of a plat demonstrating that such lot and all adjoining lots . . . have been combined to create a lot . . . consistent with the following schedule of area and frontage requirements."

The plaintiffs argue that the word "lot" as used in § 10-301(2)(a) and (b) of the ordinance refers only to lots on which "dwellings" may be built, as described in § 10-301(1) of the ordinance. They submit that the "savings clauses" in § 10-301(2) of the ordinance are intended to apply only to residentially zoned property, and not to the property in question, which is commercially zoned. The master found such an interpretation to be a "strained construction." We agree with the master.

■■ The plaintiff correctly asserts that words used in a zoning ordinance will be given their ordinary meaning unless it appears from their context that a different meaning was intended. *Town of Greenland v. Bunker*, 118 N.H. 783, 785, 394 A.2d 321, 322 (1978). The ordinance at issue has five subsections. It is clear on its face that subsection (1) of § 10-301 is not intended to qualify or modify the language of subsection (2) or of subsections (3)–(5). The master noted that "[f]or instance, the corner set back requirements of subsection (5) are clearly not limited to lots containing dwellings." *Cf.*, Portsmouth Zoning Ordinance § 10-301(4) (as amended July 1977) (refers to spires, domes and steeples). Moreover, it does not appear from the context that a different meaning was intended. *See id.*, § 10-102 (definition of lot); *cf.*, *Battcock v. Town of Rye*, 116 N.H. 167, 355 A.2d 418 (1976). To interpret "lot" in § 10-301(2) of the ordinance to refer only to lots on which dwellings may be built is contrary to the intent and plain meaning of the language used. Accordingly, we hold that the consolidation of Spectrum's lots under § 10-301(2) of the ordinance was proper.

The plaintiffs concede in their brief that "this case hinges on the issue of the proper construction of the terms in § 10-301(2)." The master states that this "is one issue that was fully tried in the case. . . ." In view of our finding that the Portsmouth Zoning Ordinance § 10-301(2) was properly interpreted and applied in this case, we uphold the court's denial of the plaintiffs' petition for an injunction on grounds that the issuance of the building permit was lawful. We do not reach the issue of whether the plaintiffs' petition was properly dismissed for failure to exhaust their administrative

remedies. Even if we assume *arguendo* that the court based its decision upon erroneous reasoning on that issue, the verdict would be upheld because there are alternate grounds to support it. *Sprague v. Town of Acworth*, 120 N.H. 641, 419 A.2d 1075 (1980); *Cheever v. Roberts*, 82 N.H. 289, 291, 133 A. 22, 23 (1926); *Favorite v. Miller*, 176 Conn. 310, 317, 407 A.2d 974, 978 (1978); *see Moultonboro v. Bissonnette*, 105 N.H. 210, 213-14, 196 A.2d 703, 705-06 (1963); *Hood & Sons v. Boucher*, 98 N.H. 399, 404, 101 A.2d 466, 469-70 (1953).

*Affirmed.*

All concurred.