Carroll
No. 89-175

LEMM DEVELOPMENT CORPORATION

v.

TOWN OF BARTLETT

October 17, 1990

*Nighswander, Martin & Mitchell P.A.*, of Laconia (*Nancy L. Girard* and *Walter L. Mitchell* on the brief, and *Mr. Mitchell* orally), for the plaintiff.

*Donahue, McCaffrey & Tucker*, of Exeter (*Charles F. Tucker* and *Robert D. Ciandella* on the brief, and *Mr. Tucker* orally), for the defendant.

JOHNSON, J. The plaintiff, Lemm Development Corporation (Lemm), appeals the Superior Court's (*Temple*, J.) ruling that the defendant, the Town of Bartlett (Town), properly denied Lemm's request for a building permit. At issue is the town planning board's jurisdiction to review improvements to land under its subdivision regulations. For the reasons stated below, we reverse.

The essential facts of this case are not in dispute. In September 1986, Lemm received subdivision approval from the Bartlett planning board for a condominium development. Lemm began construction and, in July 1988, applied to the board of selectmen for a building permit to build an amenities facility on "common land" within the condominium development. The proposed amenities facility, consisting of tennis courts and a covered swimming pool and bathroom, did not appear on the subdivision plan Lemm had submitted to the planning board in 1986. The board of selectmen denied Lemm's building permit application, declaring that Lemm must obtain planning board approval before it could build the amenities facility. Lemm appealed the selectmen's denial to the superior court, arguing that the planning board could not, under its subdivision regulations, review Lemm's plans to build an amenities facility, because no further division of land was being proposed. The planning board had not yet adopted site plan review regulations. The superior court ruled in favor of the Town, and Lemm now appeals that decision.

Lemm makes the same argument to us on appeal that it made to the trial court. The Town argues, to the contrary, that the planning board's subdivision regulations empower it to review and approve or disapprove Lemm's proposed amenities facility. We find Lemm's argument persuasive and therefore reverse.

■ The interpretation of the planning board's subdivision regulations is a question of law and is thus for this court to decide. *See Trottier v. City of Lebanon,* 117 N.H. 148, 150, 370 A.2d 275, 276 (1977). We are not bound by the interpretation of the planning board. *See id.* at 150, 370 A.2d at 277; *Brennan v. Winnipesaukee Flagship Corp.,* 122 N.H. 524, 526, 446 A.2d 1175, 1177 (1982).

■ In general, the traditional rules of statutory construction will govern here. Thus, "[t]he words and phrases of a [regulation] should always be construed according to the common and approved usage of the language," *Dover Professional Fire Officers Assoc. v. City of Dover,* 124 N.H. 165, 169, 470 A.2d 866, 868 (1983), but "[w]here the [regulation] defines the term in issue, that definition will govern," *Trottier,* 117 N.H. at 150, 370 A.2d at 277. Further, "[w]hen the language of a statute is plain and unambiguous, 'we need not look beyond the statute itself for further indications of legislative intent.'" *Dover,* 124 N.H. at 169, 470 A.2d at 868–69 (citation omitted).

■ Before we examine the language of the planning board's subdivision regulations, we note that a planning board receives its authority to regulate the subdivision of land from enabling legislation contained in RSA 674:35, II. The nature of subdivision control, as well as the rules of statutory construction, caution us against allowing a planning board to expand its legislatively-granted powers in this area. Subdivision controls limit a property owner's ability to do with the property as he or she pleases. This court has traditionally been mindful of a citizen's constitutionally-guaranteed property rights and has been loath to interfere with them unnecessarily. *See* N.H. CONST. pt. I, arts. 2, 12; *Metzger v. Town of Brentwood*, 117 N.H. 497, 502, 374 A.2d 954, 957 (1977). Thus, "[t]he exercise of the special grant of power to enact subdivision controls has been strictly confined to the terms (text, provisions) of the enabling legislation." *Town of Seabrook v. Tra-Sea Corp.*, 119 N.H. 937, 941, 410 A.2d 240, 243 (1979).

■ We now turn to the enabling legislation and the subdivision regulations themselves. The enabling clause of RSA 674:35, II, empowering the planning board to control subdivisions, reads: "The planning board of a municipality shall have the authority to regulate the subdivision of land . . . ." The phrase "the subdivision of land" plainly refers to the act of subdividing land, and not to the land that has been subdivided. Thus, the legislature under the enabling legislation relating to subdivisions has granted the town planning board the power to regulate the *act* of subdividing land, and not the land that has been subdivided.

The definition of "subdivision" provided in the planning board's subdivision regulations mirrors that found in then-current RSA 672:14 (1986, current version at Supp. 1989) and states:

> "The division of a lot, tract or parcel of land into 2 or more lots, plats, sites, or other divisions of land for the purpose, whether immediate or future, of sale, rent, lease, condominium conveyance or building development. It includes resubdivision and, when appropriate to the context, relates to the process of subdividing or to the land or territory subdivided."

■ The Town argues that under the definition given above, the planning board has the power to control improvements made to land that has already been given subdivision approval. It is true that this definition relates the term "subdivision" to "the land . . . subdivided,"

as well as to the act of dividing "a parcel of land into 2 or more lots . . . ." However, we must interpret the word "subdivision" as it is used in the enabling statute, RSA 674:35, II, and not out of context, because a planning board's power to regulate subdivisions derives *solely* from this legislation. *See Tra-Sea Corp.*, 119 N.H. at 941, 410 A.2d at 243 ("The exercise of the special grant of power to enact subdivision controls has been strictly confined to the terms (text, provisions) of the enabling legislation."). Therefore, we must again look at the words of the enabling statute to determine the extent of the planning board's authority to control subdivisions. As we stated above, the word "subdivision" in the phrase "authority to regulate the subdivision of land" can have only one meaning; that is, the act of subdividing land. Thus, the last clause in RSA 672:14, defining "subdivision" as "the land or territory divided," is not encompassed by the enabling words of RSA 674:35, II, and the planning board cannot use its subdivision regulations to control improvements to land that has been subdivided.

■ Applying our interpretation to the facts of this case, we hold that the Bartlett planning board has no authority, under its subdivision regulations, to review or control Lemm's planned construction of the amenities facility. Lemm proposes to build the facility on land owned in common by the condominium owners. Since no division of ownership or physical division of the land is planned, building the amenities facility will not bring about a subdivision of the land. Where there is no act of subdividing the land, the planning board's subdivision regulations do not apply.

■ In its brief, the Town emphasizes that Lemm apparently formulated its plans for an amenities facility at the time of its original subdivision application, but nonetheless did not notify the Town of these plans in the application. In oral argument, however, the Town took the position that, under its interpretation of the subdivision regulations and the enabling statute, the planning board would have authority to review and control the construction of an amenities facility even if Lemm first conceived of the facility several years after subdivision approval was granted. Regardless of its motives, Lemm cannot be penalized for failure to include its plans in the subdivision application. Although the planning board would have benefited from knowing the details of Lemm's development plans at the outset, the planning board's subdivision regulations do not allow it to exercise the kind of control it would apparently like to have over Lemm's condominium development. To have this kind of control, the planning

board must promulgate site plan review regulations. *See* RSA 674:44, I; *Eddy Plaza Assoc's v. City of Concord*, 122 N.H. 416, 420, 445 A.2d 1106, 1109 (1982).

Lemm briefed on appeal two other issues it had raised at trial, but we need not address them because our treatment of the subdivision issue, discussed above, is dispositive of the case.

*Reversed and remanded.*

HORTON, J., did not sit; the others concurred.